```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ERIC GLATT, et al.,

 4                Plaintiffs,

 5           v.                              11 Civ. 6784 (WHP)

 6   FOX SEARCHLIGHT PICTURES
     INC.,
 7                                           Conference
                  Defendant.
 8
     ------------------------------x
 9
                                             New York, N.Y.
10                                           August 24, 2012
                                             10:00 a.m.
11
     Before:
12
             HON. WILLIAM H. PAULEY III
13
                                             District Judge
14

15           APPEARANCES

16
     OUTTEN & GOLDEN LLP
17        Attorneys for Plaintiffs
     BY:  ELIZABETH H. WAGONER
18        RACHEL M. BIEN

19
     PROSKAUER ROSE LLP
20        Attorneys no Defendant
     BY:  ELISE M. BLOOM
21        AMY F. MELICAN

22

23

24

25
```

1              (Case called)

2              THE COURT:  Good morning.

3              We have two matters on, a discovery dispute and a
4    motion to amend.  Let's deal with the discovery issue first.  I
5    have reviewed the parties' papers.  Does either side wish to be
6    heard?  Ms. Bien?

7              MS. BIEN:  Thank you, your Honor.  The issue, as your
8    Honor is aware, is a communication that was sent to former
9    interns at Fox Searchlight.  According to the submission from
10   defendants' counsel, at least some of the information that was
11   conveyed to those interns does raise some concerns for us about
12   whether it may have a chilling effect on individuals'
13   willingness to participate in the lawsuit.  We have also
14   communicated with some of the interns who shared that same
15   feeling with us.

16             At this point, without seeing the letter or the email,
17   we really are not in a position to determine what, if any,
18   further steps should be taken.  What we would ask is that
19   defendants produce the email.

20             A separate issue is that the Court had ordered earlier
21   this summer that the defendants produce contact information for
22   interns.  One of the issues that arose was that defendants did
23   not maintain centralized contact information for all interns,
24   in particular, email addresses.

25             However, it appears that if an email was sent out to a

1  good number of former interns, then defendants may have
2  compiled a list of email addresses.  We had asked that at least
3  that compilation be produced to us so that we could make
4  efforts to communicate with potential class members.
5          That is the discovery dispute as we see it.
6          THE COURT:  On your coercion point, how can there be a
7  risk of coercion if the email only reached former interns?
8          MS. BIEN:  I think the risk is not just limited to
9  current employees.  The risk is that there could be
10 communications, potentially misrepresentations, about the
11 lawsuit or positions that defendants have taken in the lawsuit
12 that may not be neutral communications, that may prevent people
13 from responding to our communications, be willing to
14 participate in any way, or maybe be concerned about joining the
15 lawsuit and protecting their rights.
16         Your Honor, at this point we don't know yet whether
17 there is any problem with the communication.  I think we are in
18 the dark a bit.  But I do have some concerns about what
19 defendants wrote in their letter.  In particular, they said
20 that the email address concerns that they had raised to the
21 Court included their position that we may be getting in contact
22 with those interns in order to, quote, drum up participants for
23 this action.  That's what they wrote in their letter.
24         I think that kind of language isn't the sort of
25 neutral communication that would likely be permissible and

1    would not require any further steps.  But having not seen the
2    email itself, I don't know if that is the case.
3            THE COURT:  Let me hear from Ms. Bloom.
4            MS. BLOOM:  Thank you, your Honor.  The email was sent
5    in June of this year.  It's our position that it wasn't
6    coercive.  We are prepared actually to give the Court a copy of
7    it so that the Court could make its own independent
8    determination as to whether or not it felt it was coercive.
9            By way of background, as you may remember, we had a
10   concern the last time that we were here because since this case
11   was filed in September of 2001, there has been a steady stream
12   of publicity in the press.  Ms. Wagoner was on YouTube.  Then
13   there was a very aggressive outreach to potential plaintiffs in
14   the case.  I think we had provided you with a copy of some of
15   the out links through Linked-In.
16           We were getting questions from people about the case.
17   In one instance I guess Ms. Bien had contacted somebody and
18   they didn't want to participate, and then they got a phonecall
19   from somebody else from the firm.  So there was a lot of
20   confusion.
21           In June we did -- not me, but our client did send out
22   an email communication.  I do want to correct one thing that
23   Ms. Bien said.  It went to former interns, except I have gone
24   back and looked, and of the former interns, there are two that
25   do currently work for Searchlight.  So you should know that.

1          Since we sent out the email, I think they got two
2   people who have said they are interested in being involved in
3   the lawsuit.  It's unclear to what extent.  The media campaign
4   has continued, in fact intensified of late.  It is our position
5   that there was nothing coercive about.
6          The other thing I had wanted to put out is we had
7   asked the plaintiffs' attorneys -- remember we had had this
8   issue about contact information?  They had said that they
9   wanted the contact information in order to do their
10  investigation.  We had expressed a concern about trying to
11  potentially solicit class members.  They prevailed in that and
12  they were given the contact information.
13         We then asked for copies of communications, and they
14  resisted giving us copies of the communications that they sent
15  out.  We hadn't raised that issue with the Court yet.  We
16  didn't think it was ripe, because, as you saw in our letter,
17  there was a whole host of other things.  They indicated they
18  might be withdrawing part of the case.
19         In any event, if you order us to turn over our email,
20  we would ask that they similarly be ordered to turn over all of
21  their communications.  We have a similar concern that they may
22  be going a little bit further than that which we would normally
23  think would rise to the level of solicitation.
24         THE COURT:  As you have noted, that is really not
25  properly before me.  That was sort of a drive-by footnote in

1  your letter.

2  I've reviewed the matter. I think, quite frankly,
3  it's emblematic of the litigiousness of the parties in this
4  case. I'm going to rule on it right now.

5  Plaintiffs in this Fair Labor Standards Act case seek
6  production of a July or perhaps June 2012 email that Fox
7  Searchlight Pictures, Inc. sent to its interns discussing this
8  lawsuit. According to plaintiffs, production of the email will
9  provide them with intern contact information that they do not
10 currently possess. Further, plaintiffs maintain that
11 inspection of the email is necessary so that they can determine
12 whether the email poses a risk of coercion. See EEOC v. Morgan
13 Stanley & Co., 206 F.Supp.2d 559 at 562 (S.D.N.Y. 2002).

14 This Court has already determined that plaintiffs are
15 entitled to contact information of putative class members. See
16 Glatt v. Fox Searchlight, Inc., No. 11 Civ. 6784 (WHP) 2012 WL
17 2108220 at *2 (S.D.N.Y. June 11, 2012). And Searchlight
18 acknowledges that it does not maintain a database of corporate
19 interns email addresses.

20 Thus, Searchlight's July email to interns will likely
21 provide plaintiffs with new contact information to which they
22 are entitled. Moreover, without examining the July email,
23 plaintiff cannot determine whether to seek this Court's
24 intervention to mitigate any risk of coercion. Accordingly,
25 Searchlight is directed to produce the July email to plaintiffs

1  forthwith.
2              For its part, as alluded to here, Searchlight requests
3  that this Court order plaintiffs to produce their
4  communications with putative class members.  But this looming
5  discovery dispute was raised only fleetingly at the end of
6  Searchlight's August 2 letter to the Court, and it's not
7  properly before the Court at this time.  To the extent that
8  Searchlight seeks this Court's intervention, the parties should
9  follow this Court's individual rules, something they did not do
10 in connection with this application.
11             I could have just bounced it all back to you, and I
12 will bounce them back to you from now on.  You know exactly
13 what my individual practices require:  A joint letter.  In the
14 future no joint letter, no decision, and no extension on
15 discovery, because it will be a delay that you will just be
16 causing to yourselves by not following the rules.  A cautionary
17 note to both sides.
18             This constitutes the ruling of the Court with respect
19 to the July email.  I'll enter a short order on the docket
20 reflecting it.
21             Now let's turn to the other issue, which is the
22 plaintiffs' motion to amend.  Typically, I think that motions
23 to amend, especially when discovery isn't even closed, are just
24 an unnecessary exercise.  And obviously it would warrant some
25 extension of discovery.  If the parties can't work it out, I'm

1  going to tee up an accelerated briefing schedule on the motion
2  to amend.  I'm going to live in hope that you could work it out
3  after this conference, but in the event that you can't, when
4  can the plaintiffs file their motion?
5           MS. BIEN:  Your Honor, I would ask for ten days.
6           THE COURT:  All right.  File your motion on
7  September 5.
8           When do you want to oppose the motion?
9           MS. BLOOM:  14 days later.
10          THE COURT:  File your opposition on the 19th.  Any
11 reply by the 25th.  I'll put the case on for argument at 5
12 o'clock on October 2.  But maybe you will take a few minutes to
13 resolve this issue and save us all some trouble.
14          Anything further?
15          MS. BIEN:  Your Honor, there is a briefing schedule
16 currently set in the case management plan for the class and
17 collective certification motion based on the former complaint.
18 It overlaps with this current briefing schedule.  How would
19 your Honor like us to address that?
20          THE COURT:  Until I resolve the question of this
21 amendment, it's hard to tee up the certification, right?
22          MS. BIEN:  I agree, your Honor.
23          THE COURT:  It was the defendant who said they didn't
24 want to have any delay, but now we'll have a delay unless there
25 is an agreement.  I'll probably decide that motion to amend

1  right from the bench.
2           Anything else?
3           MS. BLOOM:  I have a question about the October 2nd
4  date.  Is there any opportunity to do that later that week?
5  I'm supposed to be out of town on the 1st and the 2nd.
6           THE COURT:  October 3, will that work, Ms. Bloom?
7           MS. BLOOM:  If not, just leave it, and I'll change my
8  plans.
9           THE COURT:  Did you say the 3rd works or not?
10          MS. BLOOM:  No.  If it were possible to do it Friday?
11          THE COURT:  All right, I'll put it on on October 9 at
12 5 o'clock.  I've got a murder trial going starting on
13 October 1.
14          MS. BLOOM:  I'm sorry, your Honor.
15          THE COURT:  There will be no need to apologize if you
16 just work this out.  Read 15(a).  Amendments are liberally
17 granted.  The federal rules rarely used adverbs.
18          Anything else?
19          MS. BIEN:  Not from us, your Honor.
20          MS. BLOOM:  Not from us.
21          THE COURT:  I've used all the coercion I can use.
22 Have a good weekend.
23          (Adjourned)
24
25