```
      CA93GLAC

 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    ERIC GLATT, et al.,

 4                  Plaintiffs,

 5             v.                              11 CV 6784 (WHP)

 6    FOX SEARCHLIGHT PICTURES,
      INC.,
 7
                    Defendant.
 8
      ------------------------------x
 9                                             New York, N.Y.
                                               October 9, 2012
10                                             5:50 p.m.

11    Before:

12                    HON. WILLIAM H. PAULEY III,

13                                          District Judge

14                         APPEARANCES

15    OUTTEN & GOLDEN, LLP
           Attorneys for Plaintiffs
16    BY:  RACHEL BIEN
              ELIZABETH WAGONER
17
      PROSKAUER ROSE LLP
18         Attorneys for Defendants
      BY:  ELISE BLOOM
19            AMY MELICAN

20

21

22

23

24

25
```

1           (In open court)
2           MS. BIEN:  Good evening or afternoon, your Honor.
3    Rachel Bien of Outten & Golden.  With me is Elizabeth Wagoner
4    for the plaintiffs.
5           THE COURT:  I'm sorry.  Are you Rachel Bien?
6           MS. BIEN:  "Bien."
7           THE COURT:  I'm sorry.  Okay.  It's been a long day.
8           MS. BIEN:  I understand.
9           THE COURT:  You're going to have to keep your voice up
10   with the microphone, all right?
11          MS. BIEN:  Yes.
12          MS. BLOOM:  Good evening.  Elise Bloom and Amy Melican
13   for the defendant.
14          THE COURT:  Good afternoon to you, Ms. Bloom.  All
15   right.  This is oral argument on the plaintiffs' motion to
16   amend.  You want to be heard?
17          MS. BIEN:  Yes, your Honor.  I'm happy to answer any
18   specific questions the Court may have.
19          There are three principal changes that plaintiffs seek
20   to make to the complaint.  First is to add Fox Entertainment
21   Group as a joint employer of the plaintiffs and the class of
22   interns that they seek to represent.  In the complaint, we have
23   alleged several facts which meet the Iqbal Twombly plausibility
24   standard for --
25          THE COURT:  Right.  Just to get some clarification, am

1    I correct that neither Antalik nor Gratts assert overtime
2    claims?
3            MS. BIEN:  That's correct.
4            THE COURT:  And if Fox Entertainment employed no
5    interns directly, why don't you name the corporate subsidiaries
6    that the interns actually worked for?
7            MS. BIEN:  Well, one of the issues that arose is that
8    defendants have refused to provide the identities of those
9    subsidiaries that those interns worked for.  Despite our
10   request that we do so and try to streamline or even eliminate
11   this issue entirely from the motion to amend.  We know that the
12   same intern recruiter recruited interns for several different
13   subsidiaries.  We know that Fox Entertainment Group is the
14   parent corporation.  We also see that Fox Entertainment Group
15   is listed as the entity on several of the very relevant
16   policies that are at issue here, including the offer letter
17   that was sent to interns that says welcome to the Fox
18   Entertainment internship program.  So we do think that there
19   are several pieces of evidence that link Fox Entertainment
20   Group to the policies at issue.
21           We do think that it would streamline the process and
22   move the ball forward if we knew what subsidiaries specifically
23   employed those interns.  If we had known that, we certainly
24   would have considered identifying or adding those subsidiaries
25   and possibly not adding Fox Entertainment Group.  But we were

1   in a position without that information.

2              I think that if the Court allows us to go forward on
3   this complaint and we do take the limited discovery we've
4   requested, we would be -- if the discovery shows Fox
5   Entertainment Group is not the appropriate defendant to name,
6   we would of course try to address that with defendants and
7   reach an agreement first.  And if we were unable to do that,
8   let the Court know.

9              We have no interest in suing the wrong defendant.  And
10  we have no interest in trying to represent a class and
11  collective that is broader than the case really authorizes.

12             So that's the position we're in here today.  I do
13  think that we have enough information, we have alleged enough
14  facts to go forward on the complaint today, and at least get
15  that discovery that will let us sort of clarify what
16  subsidiaries we're talking about.  It was sort of on the tip of
17  the tongue of the witness during her 30(b)(6) deposition, but
18  the defendants prevented her from answering those questions.  I
19  think we could probably clear it up pretty easily once we have
20  the discovery.

21             THE COURT:  Thank you, Ms. Bien.  Let me hear from
22  your adversary.

23             MS. BLOOM:  Do you want to hear about FEG or there's a
24  number of different things.

25             THE COURT:  There's a number of arguments that you

1   raise that are in a sense premature, aren't they?  Like the
2   adequacy of plaintiff's class representatives.
3           MS. BLOOM:  Argument as to the class representatives,
4   there were two class representatives or two proposed
5   representatives in particular.  And if it is okay with your
6   Honor, I'd like to start with Ms. Gratts who is the proposed
7   representative for the California intern class and the proposed
8   representative for the addition of the new California law
9   claim.  And as to Ms. Gratts, it is our belief that her claim
10  is barred by the statute of limitations.
11          And I understand that my adversary says that's a
12  premature issue, but we're in kind of a unique position here.
13  The case has been going on for almost a year.  We've had
14  extensive merits discovery, extensive class discovery, and
15  clearly Ms. Gratts is their client.  So before she gets added
16  as a named plaintiff for a new claim, I would think we should
17  know whether she's time barred.
18          THE COURT:  Doesn't that turn on extrinsic evidence?
19          MS. BLOOM:  If we were talking about a motion to
20  dismiss the complaint, that's one thing.  We're here before you
21  today, your Honor, because after about eight months, they're
22  seeking to amend the complaint to add a new plaintiff, somebody
23  who has not been in the case, her FLSA claim is completely time
24  barred, and they seek to add her as a representative for a new
25  claim under California law.

1         And your Honor, even if you were going to allow
2    Ms. Gratts to come into the case, it is our position that as a
3    matter of law, you should not allow the addition of the
4    California claim because there is no original jurisdiction.  I
5    believe they've now withdrawn their claim that it would be
6    covered by CAFA, and that would leave the Court in the position
7    of whether or not to exercise supplemental jurisdiction over
8    the California law claim.  That's discretionary.  And one of
9    the key facts is whether or not the Court would have to
10   confront a novel or an unsettled issue of law.  And there is a
11   critical unsettled issue of law and that is how the California
12   courts are going to interpret the DLSE opinion about what the
13   factors are for interns.
14        THE COURT:  Doesn't the California Unfair Competitive
15   Law track the federal FLSA standard?
16        MS. BLOOM:  The California law does, but --
17        THE COURT:  So why is that novel?
18        MS. BLOOM:  It is novel because the DLSE, their
19   agency, is the agency that has articulated the facts for
20   whether or not somebody is an unpaid intern.  In September of
21   2010, the DLSE changed the factors that it was going to look
22   at.  No California court has interpreted whether those factors
23   will be adopted, and why that's significant, your Honor.  You
24   may be familiar with the Brinker decision that came out of the
25   California Supreme Court.  And in the Brinker decision, the

1   Supreme Court of California expressly rejected a position that
2   had been taken by the DLSE on meal and rest breaks.  So
3   essentially you would be determining whether or not the new
4   DLSE standard articulated in April of 2010 should be followed
5   under the California law.
6            Remember, your Honor, the FLSA claims of the
7   production interns to the extent they're timely are already in
8   the case.  They are now seeking to add a new claim under a new
9   law which we submit to you would require you to actually make
10  law.  And we believe that you should not exercise supplemental
11  jurisdiction and that there is sufficient case law to support
12  that.
13           THE COURT:  All right.
14           MS. BLOOM:  Do you want me to talk about FEG?
15           THE COURT:  The papers are very thorough here.
16           MS. BLOOM:  Okay.
17           THE COURT:  I promised the parties that I was going to
18  do everything I could to move this along.  If you had something
19  new that's unseen in the motion papers, tell me about it.  But
20  otherwise I think I'm prepared to rule.
21           MS. BLOOM:  Your Honor, the one, well, the point I
22  would like to make to you about FEG, and I believe it is in our
23  papers, I'm not sure it's crystal clear or as clear as I would
24  like it to be.  It's not a situation where the plaintiffs are
25  saying we want to sue the parent company of the current

1    defendants Searchlight.  They're saying we want to add this
2    other company, and if we can't have this other company, then we
3    want to add all -- we want to add the number of affiliated
4    companies under it.  And the one plaintiff that they proffer
5    for that is Eden Antalik.  The way they try to connect
6    everybody together is through Amy Hoffman.  Everyone in the
7    case already knows that Eden Antalik who has consented to join
8    the case under the FLSA and whose deposition was taken,
9    everybody knows she was an intern in Searchlight New York who
10   did not go through the Amy Hoffman selection process.  Amy
11   Hoffman subsequently processed paperwork for her, but at the
12   point that she was selected, it was done autonomously by New
13   York Searchlight.  So she suffered no injury by FEG.  She
14   suffered no injury by any of these affiliated companies.
15           And what we all, all know because of the depositions
16   that occurred, is that each of these companies independently
17   select their interns.  There may be a person who supervises or
18   does the administrative work.  But each company independently
19   posts, people independently apply, people independently select.
20   So there is no plaintiff for any company other than the
21   Searchlight corporate interns.  And I wanted to make sure that
22   that point was crystal clear.
23           THE COURT:  All right.  I think I've got it.
24           MS. BIEN:  I would like to respond to some of the
25   points that were made, unless your Honor would prefer that I

1    not.

2          THE COURT:  It is 6 o'clock.  I have other matters on.
3    And most importantly, I'm ready to rule.  So, let me rule.

4          Plaintiffs in this FLSA and state law case move for
5    leave to file an amended complaint.  First, they seek to
6    broaden the scope of the case to include all interns who
7    participated in the "Fox Entertainment Group Internship
8    Program'' and add Fox Entertainment Group, Inc. as a defendant.
9    Second, Plaintiffs seek to separate the current intern class
10   and collective into two groups: (a) interns who participated in
11   the Fox Entertainment program (i.e., Corporate Interns) and (b)
12   interns who worked on films coproduced by Fox Searchlight, Inc.
13   (i.e., Production Interns). Finally, Plaintiffs seek to add two
14   new named plaintiffs: (a) Eden Antalik, as a class
15   representative for the Corporate Interns and (b) Kanene Gratts,
16   as a class representative for a class of California interns
17   under California's Unfair Competition Law.

18         Under Rule 15, "when a party requests leave to amend
19   its complaint, permission generally should be freely granted.''
20   Anderson News L.L.C. v. American Media. Inc., 680 F.3d 162, 185
21   (2d Cir. 2012).  Nevertheless, leave to amend, "may properly be
22   denied for: undue delay, bad faith or dilatory motive on the
23   part of the movant, repeated failure to cure deficiencies by
24   amendments previously allowed, undue prejudice to the opposing
25   party by virtue of allowance of the amendment, futility of

1    amendment, etc." Ruotolo v. City of New York, 514 F.3d 184,
2    191 (2d Cir. 2008).  An amended complaint is futile "when the
3    proposed new pleading fails to state a claim on which relief
4    can be granted.''  Anderson News, 680 F.3d at 185.  To survive
5    a motion to dismiss, a complaint must plead "enough facts to
6    state a claim to relief that is plausible on its face." Bell
7    Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim
8    has facial plausibility when "the plaintiff pleads factual
9    content that allows the court to draw the reasonable inference
10   that the defendant is liable for the misconduct alleged."
11   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

12           Under Rule 21, "the court may at any time, on just
13   terms, add or drop a party."  "Although Rule 21, and not Rule
14   15(a), normally governs the addition of new parties to an
15   action, the same standard of liberality applies under either
16   rule."  Clarke v. Fonix Corp., No. 98 Civ. 6116 (RPP), 1999 WL
17   105031, at *6 (March 1, 1999).  In general, "joinder of claims,
18   parties and remedies is strongly encouraged.''  United Mine
19   Workers of America v. Gibbs, 338 U.S. 715, 724 (1966).

20           Here, Plaintiffs' proposed amendments are not futile
21   because they "state a claim on which relief can be granted.''
22   Anderson News, 680 F.3d at 185.  First, the proposed amended
23   complaint states a claim against Fox Entertainment, as
24   Plaintiffs allege that they were subject to the some policies
25   determining whether they were entitled to be paid minimum

1    wages. (Proposed Amended Complaint paragraphs 33-35, 37.)
2    Searchlight's objection that Fox Entertainment did not -- as a
3    matter of economic reality -- exercise the requisite control
4    over interns employed by its subsidiaries requires a
5    fact-intensive analysis and is, therefore, premature.
6    Plaintiffs allege sufficient non-conclusory facts to state a
7    plausible entitlement to relief and "fact-specific questions
8    cannot be resolved on the pleadings.'' Anderson News, 680 F.3d
9    at 185. Further, the fact that other subsidiaries of Fox
10   Entertainment may be liable as well does not show that naming
11   Fox Entertainment would be futile.
12           Second, the proposed amended complaint contains
13   sufficient non-conclusory facts to support the addition of Eden
14   Antalik as class representative for the New York Corporate
15   Intern Class and Collective. Specifically, Plaintiffs allege
16   that (a) Antalik was an intern in Fox Entertainment's corporate
17   office; (b) she was not paid; and (c) she worked for
18   Searchlight and another Fox Entertainment subsidiary. (Proposed
19   Amended Complaint paragraphs 136-139, 140, 142.)
20           Searchlight's objections to Antalik's adequacy as a
21   class representative are premature at this stage, and are more
22   appropriately deferred until Defendants' opposition to
23   Plaintiffs' class and collective certification motions.
24   Further, Searchlight's reliance on matters outside the
25   pleadings is misplaced, as the question here is whether

1     Plaintiffs' allegations, taken as true, state a claim.
2     Anderson News, 680 F.3d at 185.
3             Further, Plaintiffs' proposed claims against Fox
4     Entertainment relate back to the filing of the original
5     complaint.  Under Rule 15(c), an amended complaint naming a new
6     defendant relates back if, within the Rule 4(m) period, the new
7     defendant "received such notice of the action that it will not
8     be prejudiced in defending on the merits, and knew or should
9     have known that the action would have been brought against it,
10    but for a mistake concerning the proper party's identity."
11    Fed. R. Civ. P. 15(c)(1)(C).  The Supreme Court recently
12    clarified that relation back applies when the prospective
13    defendant "understood, or should have understood, that he
14    escaped suit'' because the plaintiff "misunderstood the roles
15    that party A and party B played in the conduct, transaction, or
16    occurrence giving rise to her claims.''  Krupski v. Costa
17    Crociere S.p.A., 130 S. Ct. 2485, 2494-95 (2010).  Because,
18    among other reasons, Fox Entertainment is Searchlight's
19    corporate parent, Fox Entertainment had the requisite notice,
20    and it is not prejudiced.  Krupski, 130 S. Ct. at 2498.
21    Further, under Krupski, the fact that Plaintiff only learned of
22    Fox Entertainment's role during discovery is inconsequential.
23    See Krupski, 130 S. Ct. at 2498.  Accordingly, the claims
24    against Fox Entertainment relate back.
25            Next, Plaintiffs' proposal to add Kanene Gratts as

1   class representative for a class of California interns under
2   California's Unfair Competition Law is not futile.
3   Searchlight's contention that Gratts's claims are time-barred
4   is premature at this juncture, as Searchlight relies on
5   materials outside the pleadings.  "The lapse of a limitations
6   period is an affirmative defense that a defendant must plead
7   and prove, and dismissing claims on statute of limitations
8   grounds at the complaint stage is appropriate only if a
9   complaint clearly shows the claim is out of time." SEC v.
10  Gabelli, 653 F.3d 49, 60 (2d Cir. 2011).  Searchlight's
11  objections to Gratts's adequacy as a class representative are
12  also premature.  And this Court may exercise supplemental
13  jurisdiction over the California claims, as they arise from the
14  same "common nucleus of operative fact'' as the FLSA and New
15  York claims.  Shahriar v. Smith & Wollensky Restaurant Group,
16  Inc., 659 F.3d 234, 245 (2d Cir. 2011).  Notwithstanding the
17  April 2010 pronouncement of the California Department of Labor
18  Standards Enforcement, California's test governing the
19  classification of interns is consistent with the FLSA's.
20  Accordingly, the proposed amended complaint does not present
21  "novel or complex issues of state Law." Shahriar, 659 F.3d at
22  246.
23          Plaintiffs have not delayed unreasonably in moving to
24  amend, and there is no evidence of bad faith. While the
25  proposed amendments will broaden the case, they will not unduly

prejudice Searchlight. Plaintiffs moved to amend before the close of discovery, and they represent that only limited additional discovery will be necessary. In any event, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant the denial of a motion to amend a pleading." United States v. Continental Illinois National Bank & Trust Company of Chicago, 889 F.2d 1248, 1255 (2d Cir. 1989).

Accordingly, Plaintiffs' motion to amend is granted. Nevertheless, the new claims must be narrowed in certain respects. First, as Plaintiffs acknowledged in their reply brief, Antalik's overtime allegations in the proposed amended complaint are insufficient, and Antalik's overtime claims on behalf of the Corporate Interns must be withdrawn. Second, Plaintiffs clarified on reply that Glatt, Footman, and Gratts do not seek to bring claims against Fox Entertainment.

Finally, the new California claims asserted by Gratts do not relate back. "While Rule 15(c) is framed in terms of an amendment that would change the party against whom a claim is asserted ... it is also applicable to a proposed change of plaintiffs." Advanced Magnetics. Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19 (2d Cir. 1997). Thus, relation back is appropriate "provided there was both notice to the defendants of the existence of the additional claim and a mistake in the original pleading as to the proper party." In re Integrated

1    <u>Resources Real Estate Limited Partnerships Securities</u>

2    <u>Litigation</u>, 815 F. Supp. 620, 642 (S.D.N.Y. 1993).  Here, there

3    is no indication that Plaintiffs were originally mistaken about

4    Gratts's identity.  Accordingly, relation back is unwarranted.

5             For the foregoing reasons, Plaintiffs' motion to amend

6    is granted.  Plaintiffs shall file a First Amended Complaint

7    conforming to this Court's ruling by October 16, 2012.  In view

8    of this amendment, this Court extends the discovery deadline

9    until December 7, 2012.  No further extensions will be granted.

10            This constitutes the ruling of the Court.  I will

11   enter a short order on the docket reflecting this ruling.

12            Now, the parties have also peppered me with letters

13   about motions for summary judgment and class and collective

14   actions certification to be filed after the close of discovery.

15   The defendants want to file some motions for summary judgment

16   before the motions for class and collective action are filed.

17   Is that correct?

18            MS. BLOOM:  Your Honor, it was a motion just as to

19   Glatt and Footman individually and only on the joint employer

20   issue.

21            THE COURT:  Right.  I'm not going to hear that

22   individually.  We're going to lump it all together.  So, I want

23   to fix a briefing schedule now with discovery closing on

24   December 14.

25            When do the plaintiffs want to file their motions for

1    class and collective action?  And the defendants can file this
2    motion for certification for summary judgment at the same time.
3    Give me a date.
4             MS. BIEN:  Just wanted to clarify that we wanted to
5    cross move.
6             THE COURT:  Everybody wants to move.
7             MS. BIEN:  Right.
8             THE COURT:  All the time.
9             MS. BIEN:  I would propose that we file our motion a
10   month after the close of discovery.
11            THE COURT:  Okay.  So, how about January 18 for
12   everybody's motions.  Motions for summary judgment, motions for
13   class and collective action all on January 18.
14            MS. BLOOM:  That's fine with us, your Honor.
15            THE COURT:  Good, because we're having a package deal.
16   There is a special on multiple motions.  January 18, they'll
17   all be filed.
18            How much time do you want to oppose each other's
19   motions?
20            MS. BLOOM:  We originally had 45 days to oppose the
21   certification and the collective, and I would ask for the same
22   amount of time.
23            THE COURT:  Well, we'll make it February 28.  That's
24   almost 45 days.  And you'll give me your replies by March 14.
25   And I'll have oral argument on all these motions on April 12.

1   All right, I'll put them down for 12 noon. And we'll wrap them
2   all up in an hour of oral argument. All right? That seems to
3   be the currency of the realm tonight.
4        Anything else?
5        MS. BIEN: Your Honor, if I could just make one
6   proposal. It is a short period of discovery we are going to
7   have now on the broader class and collective, and I wanted to
8   see if the Court would order the defendants, unless they would
9   be willing to do so voluntarily, to produce the contact
10  information for the individuals in the broader group. It was
11  an issue that we move to compel on with respect to the
12  Searchlight interns. Defendants have been on notice of the
13  amended complaint and likely have compiled this information
14  already. This would let us get a jump start on this discovery
15  period, and I don't imagine it would be something that would be
16  tough for them to put together, even if they hadn't started to
17  already.
18       MS. BLOOM: Just so I understand what is being asked.
19  They already have the information on the California production
20  interns which is the new class that's been added. And since it
21  doesn't relate back, I don't know whether there would be any
22  additional people or not. And then there possibly would be,
23  because of the longer statute of limitations and on the FEG
24  interns that are were at FEG -- I want to make sure we're all
25  understanding the same thing, because I'm concerned that we're

CA93GLAC

1    not.

2            MS. BIEN:  Right.  The issue which I think has been
3    pretty clearly spelled out in the motions is we are talking
4    about interns who worked for other FEG subsidiaries that were
5    subject to the same policies and were recruited under the same
6    set of programs that Ms. Hoffman administered.

7            THE COURT:  I've already ruled on it.  It shouldn't be
8    a problem.  If there is any dispute about it, send me --
9    today's Monday, send me a joint letter by Thursday.  That
10   should force everybody to beat their swords into plowshares
11   between now and Thursday.  Otherwise I'll rule on it just like
12   I ruled on all this.  All right?

13           MS. BIEN:  Yes, thank you.

14           THE COURT:  I've got other matters on.  So have a good
15   evening.

16                                o0o