```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ERIC GLATT,
     ALEXANDER FOOTMAN,
 4
                    Plaintiffs,
 5
               v.                           11 Civ. 6784 (WHP)
 6
     FOX SEARCHLIGHT PICTURES, INC.,
 7                                          Argument
                    Defendant.
 8
     ------------------------------x
 9
                                            New York, N.Y.
10                                          September 4, 2013
                                            2:00 p.m.
11
     Before:
12
            HON. WILLIAM H. PAULEY III
13
                                            District Judge
14

15            APPEARANCES

16
     OUTTEN & GOLDEN LLP
17        Attorneys for Plaintiffs
     BY:  JUNO E. TURNER
18        SALLY J. ABRAHAMSON

19
     PROSKAUER ROSE LLP
20        Attorneys for Defendant
     BY:  ELISE M. BLOOM
21        MARK HARRIS
          AMY F. MELICAN
22

23

24

25
```

1  THE COURT: Good afternoon. This is argument on the
2  defendants' motion to certify a question for immediate appeal
3  and a motion to stay. Do you want to be heard?
4  MS. BLOOM: Yes, your Honor, I do.
5  Your Honor, if I may, I want to start with the motion
6  for interlocutory appeal and to certify your June 11th order.
7  As the Court is aware, the standard for granting a 1292 appeal
8  is that the order involves a controlling question of law as to
9  which there are substantial grounds for difference of opinion
10 and an appeal from the order may materially advance the
11 ultimate termination of the litigation. It is our position,
12 your Honor, that your June 11th order satisfies all of those
13 criteria.
14 Judge Baer, in the Hearst, case certified a similar
15 order involving similar questions to the Second Circuit. In
16 certifying, among others, the issue of what the appropriate
17 test is for an intern under the Fair Labor Standards Act and
18 whether or not his order denying certification under Rule 23
19 was proper, Judge Baer recognized that the question of what the
20 appropriate test is for determining an intern under the Fair
21 Labor Standards Act was, first, an issue of first impression
22 for the Second Circuit.
23 He also recognized that the standard, what the
24 standard is, cuts to the very core of the Hearst case, and your
25 Honor cuts to the very core of the issues involved in our case.

1      THE COURT:  Has the Second Circuit taken any action
2 with respect to that certification?
3      MS. BLOOM:  No, your Honor, they have not.  In the
4 intervening period of time, I don't know whether the Court is
5 aware, but I think there are eight or nine intern cases that
6 have been filed in this district alone.
7      THE COURT:  Last time I looked there were five.  All
8 right, I'll accept it.
9      MS. BLOOM:  There was one filed this week, as recently
10 as last Friday.  There is also one case where a petition for
11 cert. was filed to the Supreme Court.  It's a case coming out
12 of the Eleventh Circuit, a three-person intern case, in which
13 the plaintiffs actually lost.  They are appealing to the
14 Supreme Court.  One of the bases for their petition is that
15 there is a disagreement among the circuits as to what the
16 standard would be.  At least here in the Second Circuit, the
17 Second Circuit has not yet articulated what the standard is.
18      Beyond Judge Baer's order and perhaps most
19 significantly is that plaintiffs' counsel themselves have
20 argued in the Hearst case for certification of the very same
21 question that we are arguing for certification here, and they
22 are opposing our petition, asking you to certify the question.
23      Despite copious and many, many briefs in both cases,
24 they have been incapable of articulating what the distinction
25 is.  At one point they suggested that there had been a trial

1   date scheduled in Hearst and that made that case different from
2   this case.  But one only needs to look at Judge Baer's order
3   denying certification to realize that he actually had vacated
4   the trial date in that case.
5           As I went back and I looked at their briefs and some
6   of the arguments and statements that they had made, it seemed
7   almost as if they could have been briefs that were authored by
8   us.  For example, plaintiffs' counsel in their Hearst brief, in
9   their reply memorandum asking Judge Baer to certified the
10  intern question, stated, "The substantial differences between
11  this Court's analysis and that of other courts in this
12  district," referring to your decision, your Honor, "about the
13  test to be applied to plaintiffs' claims demonstrate that this
14  controlling question of law should be decided by the Court of
15  Appeals before this case proceeds further."
16          Further emphasizing their agreement with the fact that
17  this Court should in fact certify its June 11th order is one of
18  the very subheadings in the brief that they submitted to the
19  Second Circuit asking the Second Circuit to take a look at the
20  intern question.  The heading reads, "The decision in Glatt v.
21  Fox Searchlight pictures, Inc. illustrates the substantial
22  basis for difference of opinion that exists in interpreting
23  Walling and the DOL factors."
24          So, your Honor, it is not just Judge Baer who has
25  recognized the need for certifying, among other things, the

1   intern question and justifies certifying your June 11th order,
2   but it is plaintiffs' counsel themselves who have urged to have
3   that question certified to the Second Circuit, and their
4   opposition in this case can only be attributed to the fact that
5   they lost in the Hearst case and they won before your Honor.
6         In addition, your decisions support certifying your
7   June 11th order in this case.  Most recently, in your decision
8   in Retired Board of Policemen Annuity and Benefit Fund of
9   Chicago Bank of New York Mellon, 11 Civ. 05459, decided on
10  February 14, 2013, you granted a request to certify to the
11  Second Circuit, recognizing that although the issue involved
12  would not ultimately terminate the litigation, the case might
13  be considerably streamlined if the issue were to be decided by
14  the Second Circuit.  And in fact the Second Circuit granted the
15  application for interlocutory appeal back in May.
16        There can be no question that in this case the issue
17  of what the appropriate intern test is satisfies the criteria
18  for 1292 review and that the issue of what the appropriate test
19  is for determining an intern goes not just to your
20  certification order, goes not just to the standard under the
21  Fair Labor Standards Act for sending out notice, but also cuts
22  to the very core of the substantive issues involved in this
23  case, specifically, whether or not the interns at Fox were
24  properly classified as interns and were therefore not entitled
25  to pay under the Fair Labor Standards Act.

1                  To not give the Second Circuit an opportunity to

2     consider the question before proceeding further in this case

3     could result in the case going through one, possibly two trials

4     only to have to be retried at the conclusion.

5                  The decision in this case and the standard that was

6     applied in this case is something that, if the Second Circuit

7     grants the petition in the Hearst case, the Second Circuit is

8     going to be looking at regardless of whether or not you certify

9     your order.  Your Honor, we suggest that that provides an

10    additional basis for why you should certify your order in this

11    case.  If the Second Circuit is going to be looking at the

12    order anyway, shouldn't they have the benefit of the entire

13    record?

14                 THE COURT:  What about the question of post-discovery

15    conditional certification?  How can that be a controlling

16    question, that branch of the decision?

17                 MS. BLOOM:  Very simply, your Honor.  The Second

18    Circuit has yet to rule on what the standard is for post-

19    discovery certification in a fair labor standards case.  One

20    need look no further than Judge Crotty's decision in the Torres

21    case, in which he specifically stated that the Second Circuit

22    has not yet determined what standard to apply in considering

23    whether potential class members are similarly situated.

24                 He, in reaching his decision in the Torres case,

25    articulated three factors that the court should look at, and in

1   the Torres case, as opposed to in this case, he found that all
2   three of those factors had been met.  You reached a different
3   conclusion but yet authorized notice.
4            Given the fact that the Second Circuit has not ruled
5   on that issue, we submit that that is an equally important
6   question that should be certified at this juncture as part of
7   certification of your entire order.
8            THE COURT:  I guess my point is it is a conditional
9   order that at the end of the day is subject to final
10  certification at a later date.  If in a post-judgment appeal
11  the Second Circuit found that the wrong standard was used for
12  conditionally certifying the collective action but not for the
13  final certification, would that lead to a reversal of the
14  judgment?
15           MS. BLOOM:  Your Honor, I guess the place where you
16  and I disagree is that the post-judgment certification serves
17  as the final certification under the Fair Labor Standards Act.
18  Plaintiffs chose to bypass the initial certification, which
19  would have come at the commencement of the action.  While the
20  Court can at any point in time decertify, the stage where we
21  are right now in the FLSA portion of this case is really the
22  final certification stage.
23           At this point, if the Court were not to certify that
24  question, the case would proceed.  And if you didn't grant a
25  stay, the case would proceed through conclusion, at which point

1   the Second Circuit would opine on the question of whether the
2   certification standard had been appropriate.
3           For all of these reasons and as I read Rule 1292(b),
4   you certify the entire order.  It is our position that the
5   presence of even one issue which would justify certification
6   would justify certification in this case, and with or without
7   the FLSA piece of this, the intern question and what the
8   appropriate test is in your opinion justifies certification and
9   satisfies all of the criteria of Rule 1292(b).
10          Would you like me to address the stay at this point?
11          THE COURT:  Briefly, yes.
12          MS. BLOOM:  At this point we are asking the Court to
13  stay further proceedings in this court pending a determination
14  from the Second Circuit as to what the standard is under the
15  intern test or at least until such time as we learn whether or
16  not the Second Circuit is either going to hear the Hearst case
17  or hear the 23(f) petition in this case.
18          There is no prejudice at all to the plaintiffs in this
19  case, because your most recent order tolled the statute of
20  limitations under the Fair Labor Standards Act back to January
21  13, which was the tolling that they had been requesting.  So at
22  this point in time the plaintiffs such no prejudice at all.
23          As you know, the discovery on the substantive part of
24  this case is complete, so this is not a situation where we are
25  asking the Court to stay discovery while we see what the Second

1  Circuit does.  Discovery has already been conducted in this
2  case.
3              There would be substantial prejudice to the defendant
4  in not issuing a stay and, more importantly, it would be
5  against the interests of judicial economy.  Were this Court not
6  to issue a stay and were notice to go out and were the case to
7  proceed through the next phases, we potentially could be in a
8  situation where the wrong standard is applied, the Second
9  Circuit determines or articulates a different standard, which
10 changes the outcome, which results in other a renoticing of
11 class members and/or retrial of the case.
12             THE COURT:  Those are just litigation costs, aren't
13 they?
14             MS. BLOOM:  No, they are not a litigation costs,
15 because they actually involve the interests of a third party.
16 What is interesting about the situation involving notice is
17 that if you look at the Manual for Complex Litigation, the
18 Manual for Complex Litigation talks about a situation where you
19 have the balancing of interests and where you actually have the
20 interests of the third party, and in this case the third
21 parties are the absent potential class members.
22             The Manual for Complex Litigation actually looks at
23 how, if you have a situation like this, there can be potential
24 damage to the putative class members by sending out a notice
25 that either shouldn't have been sent out in the first place or

1  includes class members who otherwise wouldn't have been
2  included in the class.
3      In fact, one of the very cases that my adversaries
4  rely upon in their papers, the Beatty case coming out of the
5  Eastern District of Michigan, in that case, although the court
6  wouldn't stay the entire proceedings and allowed some discovery
7  to proceed, the court specifically noted that what should not
8  proceed should be names and addresses and notice to the class
9  for the very reason that we are asking you to stay the
10 proceedings in this case, because it could result in confusion
11 and result in a situation where there would potentially need to
12 be a renoticing or a revoking of notice that had gone out.
13     The other thing that I would like to point out is that
14 to the extent the plaintiffs suggest that they haven't had an
15 adequate opportunity to either investigate their claims or talk
16 to potential class members, you will probably recall that back
17 in August of 2012 you ordered us to turn over some contact
18 information.  That was followed in November of 2012 by an order
19 from Magistrate Judge Peck, which was not objected to or
20 appealed from, that had us turn over other contact information
21 of putative class members.  So the plaintiffs have obviously
22 had the opportunity to talk to putative class members.
23     At this point all that remains would be to put
24 together a list and send out notice to class members.  It is
25 the sending out of the notice that we would like the Court to

1   stay.  If the Second Circuit looks at the intern standard and
2   if the Second Circuit disagrees with your Honor or disagrees
3   with Judge Baer or articulates, whatever standard the Second
4   Circuit articulates will be inextricably intertwined with
5   whether notice should go out and to whom notice should go out.
6            It is our position that given the state of this case
7   right now, there is absolutely no prejudice to the plaintiff
8   and that it is in everybody's best interests to wait at least
9   until we find out whether or not the Second Circuit is going to
10  look at the intern question.
11           For all of those reasons, we would ask you to enter a
12  stay in this case.  Thank you.
13           THE COURT:  Thank you, Ms. Bloom.
14           Ms. Turner.  Let me start with something that Ms.
15  Bloom alluded to.  How can you reconcile the position you are
16  taking here with the position that you took in Wang before
17  Judge Baer?
18           MS. TURNER:  Your Honor, think part of it is in
19  something that Ms. Bloom alluded to, and that is the procedural
20  posture of the case.  Although she is correct that Judge Baer
21  had adjourned the trial, the next step in that case was going
22  to be a trial.  We were in the position of needing to prepare
23  for that trial, whenever it might be scheduled, based on the
24  order that Judge Baer had entered, which, with all due respect
25  to Judge Baer, didn't very clearly set out what the standard

1    was that we would have to meet in order to prove our claims.
2    Part of the concern there was getting perhaps a clearer
3    statement of what exactly it would be that we would have to
4    prove.
5             Here we are in a summary judgment context.  We
6    anticipate moving for summary judgment on behalf of the
7    collective and the class as well.  I think a big part of our
8    opposition in this instance is that we feel as though your
9    Honor's order is clear and is pretty straightforward as to how
10   we would go about proving our claims, and we anticipate proving
11   the claims of the class and collective in the same way.
12            THE COURT:  How can the correct standard for
13   determining whether interns are employees be a controlling
14   question of law in Wang and not here?
15            MS. TURNER:  I think the problem in Wang was that the
16   standard simply wasn't set out very clearly.  In order for us
17   to know what was controlling the prosecution of our case in
18   that case, we needed to have a clearer understanding of what
19   exactly the court was expecting from us.  The way that the
20   court set out what the standard would be, it sort of mixed up a
21   variety of tests such that from our perspective it was going to
22   be pretty difficult, for instance, to write jury instructions
23   based on that court's order.
24            THE COURT:  You argue in your brief that there is no
25   substantial basis for a difference of opinion with my decision.

1    How can that be if every circuit to address the issue has come
2    out differently as well as Judge Baer?
3              MS. TURNER:  I think, your Honor, of the circuit
4    courts that have considered the issue, the factual
5    circumstances are pretty different than what we are dealing
6    with here.  For instance, in the Laurel Brook case they are
7    dealing with a residential school that was part of a religious
8    community where students performed work as part of their life
9    there.  That's not what we are talking about.
10             Here we are talking about internships as at least
11   those of us who live in New York know them to be, sort of young
12   people working, coming out of college, gaining work experience
13   and not being paid for it.  There really hasn't been a circuit
14   that has addressed the factual scenario quite like that.
15             In our view, your Honor's decision based on the
16   governing Supreme Court precedent in Walling as well as the
17   sort of pertinent and right on point Department of Labor six-
18   factor test is also consistent with now Justice Sotomayor's
19   decision in Archie.  In our view, although some courts have
20   differed, we think that your decision was sort of in line with
21   the relevant precedent, thus making the difference of opinion
22   maybe less substantial.
23             THE COURT:  With respect to the application for a
24   stay, what harm is there to the plaintiffs of holding off on
25   notice but not staying the case?

1          MS. TURNER:  Our concern as far as notice, as the
2    defendants point out in their brief, when you are dealing with
3    a relatively mobile community of plaintiffs, those people who
4    may have been college students would have graduated.  And while
5    they are correct that that may have happened and they may
6    already have moved on, the further out we get from that point,
7    the more difficult it is going to become to track those people
8    down.
9          Frankly, your Honor, there has been sufficient
10   interest in this case and your Honor's decision that it seems
11   to us that now is a good time to send out notice because people
12   are listening.  It seems like the right time.  If we are not
13   able to find them through traditional means, we might be able
14   to find them through less traditional means, in part because of
15   the amount of media attention that has been paid.  Obviously,
16   with the passage of time we lose that ability to find the class
17   members and allow them to prosecute their claims.
18         THE COURT:  Anything else?
19         MS. TURNER:  If I could touch on the issue of the
20   conditional certification after discovery.  We would agree with
21   your Honor's view or what I perceive your Honor's view to be
22   that it is really not a controlling question of law, because it
23   is merely a conditional certification.  The fact that the
24   circuit has yet to set forth the standard for a post-discovery
25   conditional certification doesn't elevate it into being a

1  controlling question of law.

2  It can't possibly be the same standard that would be
3  applied on a motion to decertify the collective, because we
4  don't know who the collective is yet.  Nobody has opted into
5  the case.  We don't know what their experiences were as
6  interns, so there is no way to show whether they are in fact
7  similarly situated, which is the standard on a motion for
8  decertification under the FLSA.

9  In our view, certainly that portion of your Honor's
10  order should not be certified for immediate appeal.  Many
11  courts, as we set out in our briefing, do typically oppose
12  conditional certification orders for interlocutory appeal.

13  One other point.  In our view certainly you don't need
14  to certify your entire order.  If you are so inclined to
15  certify a part of it, you can certify particular questions for
16  interlocutory review.  There is no need to certify everything
17  in it.

18  THE COURT:  Can the Second Circuit nevertheless decide
19  to take up the entire order?

20  MS. TURNER:  It is my understanding that it can.

21  THE COURT:  Anything further, Ms. Turner?

22  MS. TURNER:  No, your Honor, that's all.  Thank you.

23  THE COURT:  Ms. Bloom, do you want to be heard
24  further?

25  MS. BLOOM:  Very briefly, your Honor.

1               On the FLSA piece, I think we all agree, at least we
2    and plaintiffs' counsel seem to agree, that the Second Circuit
3    has not articulated what the standard yet would be for post-
4    discovery certification.
5               Going to the intern test and taking into account
6    everything that Ms. Turner said, I don't know how in the world
7    one would determine what to put in a jury charge right now and
8    what the appropriate standard would be that would not leave
9    both parties and the Court open to have a jury verdict over-
10   turned.
11              As Ms. Turner pointed out, there have been differences
12   in the circuit, and the differences go to what the standard is.
13   What is the test?  Is it primary benefit?  Is it the totality
14   of the circumstances?  What weight do you give the DOL factors?
15   The truth is, your Honor, in the Second Circuit we just don't
16   know, and the resolution of that question will control every
17   aspect of this case.  It is inextricably intertwined with the
18   class issues, the collective issues, and the merits issues.
19              For those reasons, your Honor, we ask you to certify
20   your June 11th order.
21              THE COURT:  I am inclined to certify the question of
22   whether an intern is a covered employee.  I am not inclined to
23   certify the question of the post-discovery conditional
24   certification.  I don't see that a stay here is appropriate.  I
25   will issue an order in the next few days setting forth my

1  reasoning for this, but I wanted to advise you based on what I
2  have heard here today and after considering the parties'
3  submissions.
4           With that, I wish those of you who observe a Happy New
5  Year.
6           MS. BLOOM:  Your Honor, may I ask one question?
7           THE COURT:  Yes.
8           MS. BLOOM:  With regard to the stay, there are two
9  aspects of the case at this point.  There is the Rule 23 piece,
10 and you know we have the Rule 23(f) petition that is pending
11 before the Second Circuit on the FLSA piece.
12          THE COURT:  Right.
13          MS. BLOOM:  I would ask you to consider separately
14 whether a stay is appropriate as to one or more of those
15 pieces.
16          THE COURT:  I understand that that 23(f) application
17 pending, right?
18          MS. BLOOM:  That's correct.
19          THE COURT:  Fine.  I will.  Anything else?
20          MS. TURNER:  Your Honor, obviously, we think the
21 action should proceed on all fronts, and we are certainly ready
22 to do that.
23          THE COURT:  I will issue something in the next few
24 days.  Thank you.  Have a good afternoon.
25          (Adjourned)