```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   ERIC GLATT , et al.,

 4                Plaintiffs,

 5           v.                              11 CV 6784 (WHP)

 6   FOX SEARCHLIGHT PICTURES,
     INC., et al.,
 7
                  Defendants.
 8
     ------------------------------x
 9                                           New York, N.Y.
                                             November 1, 2013
10                                           3:30 p.m.

11   Before:

12                    HON. WILLIAM H. PAULEY III

13                                           District Judge

14                          APPEARANCES

15   OUTTEN & GOLDEN, LLP
          Attorney for Plaintiff
16   RACHEL M. BIEN
     SALLY J. ABRAHAMSON
17

18   PROSKAUER ROSE, LLP
          Attorneys for Defendant Fox
19   ELISE M. BLOOM
     AMY F. MELICAN
20

21

22

23

24

25
```

1              (In open court; case called)
2              THE DEPUTY CLERK:  Counsel, appearances for the
3    plaintiff.
4              MS. BIEN:  Rachel Bien and Sally Abramson for the
5    plaintiffs Eric Glatt.
6              THE DEPUTY CLERK:  Appearance for the defendant.
7              MS. BLOOM:  Elise Bloom and Amy Melican for the
8    defendant.
9              THE COURT:  Good afternoon, Ms. Bloom.
10             This is a conference to resolve the parties' disputes
11   concerning the notice.  I have reviewed your submissions and
12   your proposed notice, and, I must say, other than the disputes
13   that I have to resolve, and I am prepared to resolve with you,
14   I think the notice is very clear and well constructed.
15             But let's turn first to the length of the notice
16   period.  As I understand it, the parties are arguing over 15
17   days, right?
18             MS. BIEN:  Yes, your Honor.  Our position is we just
19   want to build in sufficient time for re-mailing.
20             THE COURT:  My view, an argument over 15 days could be
21   Exhibit 1 on a brief about the fact that there's no dispute too
22   trivial to bring to a federal court.
23             MS. BIEN:  I'm sorry, your Honor.
24             THE COURT:  No, it's -- first, and I'll say,
25   Ms. Bloom, I think that given the nature of the people who are

1   involved in this action; to wit, interns; to wit, college
2   students, if they don't have multiple addresses in the course
3   of two or three years, then there's something wrong with them.
4   So, one, to just cut this one right off at the knees, I think
5   there is nothing wrong with a 75-day notice here.  I don't see
6   any prejudice to the defendants, and I think a group of interns
7   provides special challenges with respect to just locating them.
8            MS. BLOOM:  OK.
9            THE COURT:  All right?  Now, as I understand it, the
10  second issue relates to whether the notice should state that
11  summary judgment was granted to Glatt and @Footman.
12           MS. BLOOM:  Yes, that's correct.  That's the second
13  issue.
14           THE COURT:  Ms. Bien, why should that be in the
15  notice?
16           MS. BIEN:  It's information about the case that we
17  thought people would want to know before they decide whether or
18  not to join it.
19           THE COURT:  But it's not information, is it, about the
20  claims of these class and collective members?
21           MS. BIEN:  The decision did not apply to these
22  particular members.
23           THE COURT:  All right.  So I think it would be
24  confusing to make a reference to the summary judgment holdings,
25  and, accordingly, I think the defendants have a point there.

1     All right?
2              MS. BIEN:  That's fine, your Honor.  I mean, one thing
3     that I would ask then is if your Honor can see the very next
4     paragraph in the notice is a very, very lengthy statement of
5     defendant's position.  I think just to have some sort of
6     parody, would the Court be amenable to us not referencing the
7     summary judgment order but referencing the bases discussed, the
8     specific bases discussed in the paragraph referring to the
9     summary judgment order as plaintiff's position as to why she
10    believes the corporate interns are employees, without
11    referencing the Court or the summary judgment order, but just
12    to provide some kind of --
13             THE COURT:  I don't have a problem with you giving a
14    little balance in terms of the amount of text to state Fox's
15    position versus the amount of text to state the plaintiff's
16    position, but I just don't think there should be reference to
17    the prior ruling of this Court which does not relate to the
18    members of the class or collective action.
19             MS. BIEN:  I think that's fine.  I would just, you
20    know, as I said, I think there should be some kind of parody
21    between the very lengthy statement defendants have, and we
22    didn't put anything in there because we referenced the summary
23    judgment decision which sets out essentially what we're arguing
24    for the corporate intern.
25             THE COURT:  Just remember the more words in a notice,

1     the less likely it is for an individual receiving it to read
2     any of it.
3             MS. BIEN:  I understand, your Honor, and that's our
4     goal.
5             THE COURT:  All right.  You don't have any difficulty
6     with that, do you, Ms. Bloom?
7             MS. BLOOM:  No, I don't.
8             THE COURT:  The next issue, as I understand it, is
9     whether defendant's contact information should be included in
10    the notice.
11            Ms. Bloom, I have to say that I am not persuaded by
12    your argument.  I don't see what legitimate purpose it serves
13    and --
14            MS. BLOOM:  The only purpose of it -- and I understand
15    completely Ms. Bien's position on it -- is that what we find in
16    these cases is that people that get these notices often have
17    questions, and they start sending random emails to random
18    people at the company and it's very difficult, one, because I'm
19    not comfortable with people in the company talking to them
20    because they're represented by counsel, but sometimes they have
21    legitimate questions, and we're not talking about any kind of
22    affirmative outreach, obviously not.  But these people had
23    questions like, especially because they were interns, if they
24    had questions and they wanted to ask a question, at least there
25    would be a central point of contact at the defendant, and that

1  person, the person whom we suggested is obviously a high-level
2  human resource person.  We would be willing to tell them
3  whatever it was that the Court felt comfortable with, but
4  obviously they would understand that people need to know that
5  they would participate if they want to participate.  That no
6  one is trying dissuade them from participating.  Just trying to
7  anticipate the problems we have encountered with some other
8  cases.
9              THE COURT:  What do you think, Ms. Bien?
10             MS. BIEN:  Well, I mean, I think that it's not -- I
11 understand that issue might come up, but to list this contact
12 information in the notice just invites more people than
13 reaching out to defendants and encourages them to do that, and
14 therein is an inherent conflict situation --
15             THE COURT:  Just understand that if somebody reaches
16 out to a person they know at Fox, those kind of contacts are
17 going to happen.
18             MS. BIEN:  Right.  I think if that does happen, what
19 defense counsel could do is send a notification to employees in
20 advance that if they get any messages, that they forward them
21 immediately to counsel, and I think that that would be --
22             THE COURT:  That creates -- I'm not going to require
23 them to do that either because that requires a whole other
24 series of hurdles.
25             MS. BIEN:  About what defense counsel can say to its

1      current employees?
2              THE COURT:  Right.  All defense counsel is trying to
3      suggest is that there would be just one -- that any inquiry,
4      that there should be no inquiries of Fox personnel, but if
5      there are any inquiries, they should be directed to this one
6      individual from HR, who would presumably know how to respond to
7      it because that individual would have been coached by Ms. Bloom
8      and her colleagues.  Right, Ms. Bloom?
9              MS. BLOOM:  Right.  As I said, these are interns.  I
10     think, as you said, I am just trying to avoid the situation
11     that, unfortunately, comes up in these cases where somebody
12     reaches out to somebody they knew, and that person has no
13     idea -- there is no way to control that.  This is the only
14     intelligent way I can think of to control it.
15             THE COURT:  It still may happen.
16             MS. BIEN:  We could say in the notice "Don't reach out
17     to defendants.  If you have any questions" --
18             MS. BLOOM:  But they will.
19             MS. BIEN:  I don't see this as being -- I think the
20     risk of the reverse happening; that more people get in touch
21     with defendants; that more people seek advice from defendants
22     not realizing that they are not representing their interest is
23     too great to allow this language to be included without any
24     caveat explaining, "The defendants don't represent you here.
25     You're already represented by counsel by virtue of the

1   certification decision," basically warning them of what the
2   consequences might be.  There's no language in there at this
3   point.
4           So, while I believe that the situation Ms. Bloom is
5   talking about, I think the risks on the other side are too
6   great to just include this individual's contact information.
7           THE COURT:  Then I will agree with the plaintiffs, but
8   the plaintiffs are not going to come back later and complain to
9   the Court that somebody at Fox said something to an intern.
10  That's all.
11          MS. BIEN:  Yeah.  I mean, I think that --
12          THE COURT:  It's fine.
13          MS. BIEN:  I just don't want to be in that situation.
14          THE COURT:  Right.  You won't be because I'm not going
15  to entertain those applications because the plaintiff says it
16  will be far worse to have a contact person in HR at Fox and to
17  put that on a notice than to say nothing.  So, that is
18  plaintiff's reasoned judgment.  I'm going to go with it only
19  because otherwise there is no reason that the defendant should
20  be contacting these people.  But I understand the quandary you
21  find yourself in, Ms. Bloom, but it doesn't look like you're
22  going to get any -- there isn't going to be any blow-back from
23  that.
24          MS. BLOOM:  OK.  That's fair.
25          THE COURT:  OK?

1             MS. BLOOM:  Yes.
2             THE COURT:  Now, the next issue:  Class opt-out
3    process.  I think that it should be just as easy to join the
4    collective action as it is to opt out of the class action.  So,
5    I don't think that somebody who wants to opt out of the class
6    action should have to send a letter.  I think that there can be
7    a form within this notice.  There's a form to opt in and a form
8    to opt out.
9             MS. BLOOM:  We provided one to the Court with the
10   letter.
11            THE COURT:  I like that.  Notwithstanding that the
12   federal judicial center says that you should have to write a
13   letter.  OK?  I think they're wrong about that.  And they don't
14   grade my papers, so...
15            All right.  Now, what about pending appeals?  That's
16   the next issue.  I tend to think that there should be some
17   reference to the pendency of appeals just to alleviate
18   potential confusion.  So I am largely in agreement with the
19   defendant on that, only for the avoidance of confusion later in
20   the event that something occurs.  I don't see how the fact that
21   there are petitions for interlocutory appeals are going to
22   somehow affect a person's decisions as to whether or not to
23   join an action, but I do think it could alleviate confusion
24   later.
25            On the question of whether notice should be delayed, I

1  don't think that notice should be delayed in this case.  I
2  think that there is going to be enough trouble locating contact
3  information for interns, and further delay would only compound
4  that problem.
5         As I also observed that the plaintiffs have a
6  legitimate interest in sending the notices while public
7  interest in this case is so high.  So I think that you should
8  send the notices now with the caveat about the appeals.
9         Finally, on the contact information, I think the
10 defendants need to produce a list of the contact information,
11 and that really should be a list of sources that the defendants
12 have consulted in compiling the contact information.  It seems
13 to me that the suggestion of interviewing former intern
14 supervisors is burdensome, but sending a mass email requesting
15 that they provide information for any interns from the relevant
16 period is appropriate.
17        I also think that if the defendants have other
18 available contact information for interns, meaning not merely
19 names and street addresses, but let's say cell phones or email
20 addresses, that that should be part of the information that was
21 provided to the plaintiffs.
22        Those are my rulings with respect to the disputes
23 about the notice.  Have I missed anything?
24        Ms. Bien?
25        MS. BIEN:  No.  I was shaking my head no.  If I could

1    make just one suggestion since the Court certified the class

2    now, I think, five months ago or so, if we can try to set some

3    kind of deadline for production of that information,

4    understanding it may take them some steps to do it, but just so

5    that we can sort of move things forward.

6              MS. BLOOM:  I think that's a fair request.  About 60

7    days.

8              MS. BIEN:  That seems very long to me, your Honor, but

9    I don't know --

10             THE COURT:  Why don't you see if you can work it.  I'm

11   really reluctant to just arbitrarily fix a date now when it's

12   you folks who know better than me what's involved in the

13   process.  I think 60 days from today is not meaningful because

14   that's December 31, and nobody is going to be doing anything in

15   New York after December 20th in any event because it's all

16   going to be part of holidays, and this thing should probably

17   get wrapped up before the holidays.  OK?

18             I think somewhere around December 10 looks really good

19   to me because people will be doing less work after that time,

20   and the plaintiffs can be running with stuff.  Why don't you

21   see.  If it's not workable, Ms. Bloom, you'll let the plaintiff

22   know.  If you can't work it out, you'll write me a letter.

23             MS. BLOOM:  Could we just have till that Friday?

24             THE COURT:  December 13th.  All right?

25             MS. BIEN:  Your Honor, one more thing just so that we

Db1QglaC

1   don't have to bother you again.  We've agreed to the content of
2   a stand-alone website to include information for potential
3   opt-ins so they could download the consent form from there if
4   need be.  I just want to be sure that your Honor approves doing
5   that.
6           THE COURT:  These are the millenials.
7           MS. BIEN:  Right.
8           THE COURT:  They don't read paper.  So I'm all for it.
9           MS. BIEN:  Thank you, your Honor.
10          THE COURT:  Anything further, Ms. Bloom?
11          MS. BLOOM:  No, your Honor.
12          THE COURT:  Thank you.  Have a great weekend.
13          (Adjourned)